UNITED STATES BANKRUPTCY COURT
DISTRICT OF IDAHO

| | |
|---|---|
| IN RE:<br><br>NICHOLAS A. JONES and AMELIA JONES,<br><br>    Debtors. | Case No. 22-00481-NGH |
| ROBIN CARNES,<br><br>    Plaintiff,<br><br>v.<br><br>NICHOLAS A JONES and AMELIA JONES,<br><br>    Defendants. | Adv. No. 23-06004-NGH |

## MEMORANDUM OF DECISION

Before the Court is an adversary proceeding brought by Robin Carnes ("Plaintiff") against Nicholas and Amelia Jones ("Defendants")[1] seeking to have a debt owed to him declared nondischargeable pursuant to § 523(a)(2)(A), § 523(a)(2)(B), and § 523(a)(6).[2] A trial on the matter was held on December 13, 2023, with written closing arguments

---

[1] Because most of the interactions and actions discussed here involve only Nicholas Jones' relationship with Plaintiff, the Court will refer to Nicholas Jones individually as "Jones."

[2] Unless otherwise indicated, all statutory citations are to the Bankruptcy Code, Title 11 U.S.C. §§ 101–1532. Additionally, all citations to "Rule" are to the Federal Rules of Bankruptcy Procedure and all citations to "Civil Rule" are to the Federal Rules of Civil Procedure.

MEMORANDUM OF DECISION - 1

submitted on January 5, 2024, after which the Court took the matter under advisement. After considering the record, arguments of the parties, and applicable law, the following constitutes the Court's findings, conclusions, and disposition of the issues. Rule 7052.

**BACKGROUND**

Plaintiff met Nicholas Jones approximately 15 years ago when Jones was living in the same college dorm as Plaintiff's son. Throughout the years, the two maintained contact. In 2018, Jones reached out to Plaintiff about an investment opportunity regarding a Good Burger restaurant located at 10th and Main in downtown Boise (the "downtown Boise Good Burger"). At the time, Jones owned and operated multiple Good Burger locations in the area and planned to open another location in downtown Boise. Jones told Plaintiff that the other Good Burger locations brought in steady sales and Plaintiff could expect a return on investment of approximately $20,000 per month.

Jones created or was involved with several entities related to his Good Burger operations. *See* Ex. 107. Good Burger III, Inc was incorporated in April 2018, Ex. 110, and was the entity that operated the downtown Boise Good Burger. However, Jones was also a member of Good Burger of Tenth and Main, LLC, a limited liability company that was created in October 2019. Ex. 109. Jones testified that the Good Burger of 10th and Main, LLC never operated.

Plaintiff testified that he discussed the matter with Jones five to seven times, both in person and by telephone, after he decided to invest in the downtown Boise Good Burger. On May 1, 2018, Jones and Plaintiff entered into a partnership agreement whereby Jones and Plaintiff would operate Good Burger III, Inc. Ex. 103. Plaintiff

MEMORANDUM OF DECISION - 2

ultimately invested $230,000 by delivering a check payable to Good Burger, III, Inc. Ex. 112. The partnership agreement provided that two years from the execution, Plaintiff could exercise a mandatory buyout option whereby he would receive his original investment, less 50% of all distributions made. *Id.* Plaintiff also received a 1/3 ownership interest in Good Burger III, Inc. *See* Ex. 105.

Shortly after investing, Plaintiff had to leave the area for work. Plaintiff anticipated the downtown Boise Good Burger would open in August or September of 2018, however when he returned from his work trip in November 2018, Plaintiff was disappointed to learn that construction had not yet started on the project.

After a prolonged build-out process, the downtown Boise Good Burger ultimately opened in March 2019. Jones testified that the location performed solid business for the first several months, but due to the increased costs of the build-out, Plaintiff did not receive any initial return on his investment. The business continued to perform well until early 2020, when business slowed due to the COVID-19 pandemic and the downtown Boise Good Burger was forced to temporarily shut down due to government restrictions put in place by the pandemic. Though the location was eventually able to reopen, the business continued to suffer until it was permanently shut down in November 2020.

Plaintiff received minimal payments up until September 2020, totaling $12,000. *See* Ex. 112. Those payments were made through checks issued by It's a Good Burger, LLC. *Id.* In February 2021, the parties agreed to convert Plaintiff's $230,000 investment in Good Burger III, Inc. into a loan obligation owed by Good Burger of Tenth and Main, LLC. Ex. 201. The parties exchanged several text messages about converting the

MEMORANDUM OF DECISION - 3

investment to a loan obligation, and Plaintiff was provided time to review the agreement. *See* Ex. 117. The loan was to be paid in the amount of $243,000, less any payments already made to Plaintiff, in a lump sum upon the sale of the Good Burger of Tenth and Main, LLC to another owner. *Id.* However, that entity was never sold.

For the next several months, Plaintiff and Jones communicated via text messages, with Plaintiff repeatedly asking about the sale of the business and the repayment. Plaintiff and Jones also exchanged text messages that discussed using Restaurant Revitalization Loan funds to repay some of the loan. Jones, however, testified that none of his business ever qualified to participate in this loan program. At this point, Jones obtained his real estate license and communicated that he planned to garner the funds to repay Plaintiff through various real estate transactions. In July 2021, Jones wrote he was "[h]oping to have this all settled before end of August. We will see. Doing real estate to get you paid." Ex. 118 at 2. However, in August, Jones wrote to Plaintiff that "[t]he real estate deal I was depending on looks like it may close in November now. Things are still moving forward." Ex. 118 at 5.

In fall of 2021, Jones told Plaintiff that he was putting his home up for sale and planned to pay Plaintiff from the proceeds. Ex. 118 at 7. However, Jones went on to say that he was doing this "because I want to make this right, not because I have to. I am in a bad position because of Good Burger. The company is liable to what is owed to you, not me." *Id.* at 8. However, when Jones ultimately did sell the home, no additional funds were paid to Plaintiff. Plaintiff and Jones continued to communicate via text, phone calls, and in-person meetings as Plaintiff sought payment. In their text messages through

MEMORANDUM OF DECISION - 4

April 2022, Jones continued to assert that Jones was not personally liable on the debt owing to Plaintiff. Ex. 119 at 6–13.

While Amelia Jones is a defendant in this adversary proceeding, she testified that she had never met Plaintiff until the trial and had never discussed any business with him. Further, she was not a shareholder of Goodburger III, Inc. and testified that she had no involvement in the business. She also was not a member of Good Burger of Tenth and Main, LLC and testified she was not involved in that business either.

On October 31, 2022, Defendants filed a voluntary chapter 7 bankruptcy petition. Case No. 22-00481-NGH, Doc. No. 1. On January 20, 2023, Plaintiff initiated this adversary proceeding. Doc. No. 1.

## ANALYSIS

### A.   Nondischargeability

Plaintiff alleges claims of nondischargeability under § 523(a)(2)(A), (a)(2)(B), and (a)(6). Plaintiff bears the burden of establishing his claims under § 523(a) by a preponderance of the evidence. *Netwest Commc'ns Grp., Inc. v. Mills (In re Mills)*, 2008 WL 2787252, at *4 (Bankr. D. Idaho June 25, 2008) (citing *Grogan v. Garner*, 498 U.S. 279, 291 (1991)). In order to preserve a debtor's opportunity for a fresh start, the nondischargeability provisions of § 523(a) should be construed liberally in favor of the debtor. *Id.*

#### 1.   Personal Liability

First, Defendants assert that the debt owing to Plaintiff is not owed by Defendants but rather by Good Burger of Tenth and Main, LLC, by virtue of the February partnership

MEMORANDUM OF DECISION - 5

agreement. However, under Idaho law, "[a] director who participates in a tort is personally liable to the victim, even though the corporation might also be vicariously liable . . . The same is true for corporate officers." *FTE Networks v. Ivie (In re Ivie)*, 587 B.R. 729, 736 (Bankr. D. Idaho 2018).[3] "In Idaho, an action for fraudulent misrepresentation is a tort." *JA, LLC v. Sarria (In re Sarria)*, 2019 WL 2612728, at 1, n.3 (Bankr. D. Idaho June 25, 2019). As such, to the extent Defendants participated in any tortious conduct on behalf of Good Burger III, Inc., Defendants are personally liable for any tortious damages they may have caused.[4]

### 2. Section 523(a)(2)(A)

Plaintiff first asserts that the debt owed to him is nondischargeable pursuant to § 523(a)(2)(A). Specifically, Plaintiff asserts that Jones made several misrepresentations concerning the expected return on Plaintiff's contribution, Jones' personal guarantee, and the conversion of the contribution to a loan. Section 523(a)(2)(A) bars the discharge of a debt obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." To establish a claim is nondischargeable under § 523(a)(2)(A), a plaintiff must establish several elements:

> (1) misrepresentation, fraudulent omission, or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on

---

[3] Jones is never specifically referred to as a director or officer of Good Burger, III. However, from testimony it is clear that Jones was the only individual involved with the day-to-day operations of Good Burger III, Inc. Further, the proposed operating agreement for Good Burger III identified Jones as the manager. *See* Ex. 106.

[4] The record is clear that Amelia Jones was not part of any Good Burger entity and was not involved in any of Jones' dealings relating to Good Burger. As such, Amelia cannot be held liable under this theory.

MEMORANDUM OF DECISION - 6

  the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct.

*Martin v. Mowery (In re Mowery)*, 591 B.R. 1, 6 (Bankr. D. Idaho 2018) (citing *Ghomeshi v. Sabban (In re Sabban)*, 600 F.3d 1219, 1222 (9th Cir. 2010)).

  First, there must be the presence of a misrepresentation or fraudulent omission. "A promise made without a present intent to perform satisfies § 523(a)(2)(A), as does a representation which the debtor knew or should have known was outside the debtor's prospective ability to perform." *Murray v. Woodman (In re Woodman)*, 451 B.R. 31, 38 (Bankr. D. Idaho 2011). However, the presence of a false representation or material omission by itself is not sufficient under § 523(a)(2)(A). "Not only must there be a representation of material fact which is false, the representation must be made with the intention and purpose to deceive." *Welch v. Laraway (Laraway)*, 2010 WL 3703272, at *7 (Bankr. D. Idaho Sept. 13, 2010). A debtor's intent to deceive may be inferred through the totality of the circumstances. *Huskey v. Tolman (In re Tolman)*, 491 B.R. 138, 153–54 (Bankr. D. Idaho 2013). Bankruptcy courts may find the requisite intent where a debtor has shown a reckless disregard for the truth. *Id.*

### a. Statements Regarding Expected Return

  Plaintiff has not presented sufficient evidence concerning Debtor's intent or knowledge. First, Plaintiff points to several statements made by Jones about the expected return on investment for the downtown Boise Good Burger. Plaintiff testified that Jones told him he could expect a return on investment of approximately $20,000 per month once the location was operational. Plaintiff believed that the downtown Boise Good Burger location would open in late summer or early fall of 2018. However, due to delays

MEMORANDUM OF DECISION - 7

in construction, the downtown Boise Good Burger did not open until March 2019. Because of the delays in construction and unexpected build-out costs, Jones testified that the downtown Boise Good Burger was not immediately profitable and was unable to provide Plaintiff a return immediately. Further, soon after opening, Good Burger's business became significantly impacted by the COVID-19 pandemic. Jones testified that as of February 2020, business in downtown Boise decreased, and Good Burger was forced to close due to lock down protocols. Once reopened, the downtown Boise Good Burger continued to struggle and was unable to become profitable. As such, the location closed in November 2020.

The fact that the restaurant never became profitable does not necessarily support a finding of nondischargeability under § 523(a)(2)(A). As noted above, § 523(a)(2)(A) requires knowledge of the falsity of the statement. While Good Burger was never able to provide Plaintiff a return on investment, Plaintiff has presented no evidence that Jones knew such statement was fraudulent at the time he made the representation. Further, when discussing investing with Plaintiff, Jones could not have predicted not only the significant delays in the build-out of the restaurant, but also the disruption to business caused by the COVID-19 pandemic. As such, the Court finds Plaintiff has not met his burden of establishing that Jones knowingly made a fraudulent representation with regards to the expected return on investment within the meaning of § 523(a)(2)(A).

### b.     Statements Regarding Personal Guarantee

Plaintiff also argues that Jones made representations that he would personally guarantee the repayment of Plaintiff's investment, which induced Plaintiff to invest. The

MEMORANDUM OF DECISION - 8

partnership agreement provides for a mandatory buyout of Plaintiff's interest after two years should Plaintiff request it. Ex. 103. However, the agreement makes no mention of a personal guarantee. Further, when the parties agreed to turn Plaintiff's investment into a loan obligation, the agreement specified that the loan was to be repaid by Good Burger of Tenth and Main, LLC, and made no mention of a personal guarantee by Jones. Ex. 201.

Jones did send a text message on June 14, 2020, stating that Plaintiff will get his money back in full and that Jones "guarantees it." Ex. 116 at 12. However, read in the context of the parties' text conversations, it is clear that Jones is not saying that he is assuming or acknowledging personal liability on the debt, but rather that he will make sure that Plaintiff gets repaid. Further, in subsequent text messages, Jones repeatedly reiterates that the repayment on Plaintiff's investment is a debt of Good Burger III, not a debt personally owed by Jones. Up through September of 2020, $12,000 was paid to Plaintiff. Ex. 112. These checks were made by It's a Good Burger LLC, not Jones personally. *Id*. Given the lack of evidence concerning a personal guarantee, Jones repeated assertions that he was not personally liable, and the checks issued by a Good Burger entity rather than Jones, the Court finds that Plaintiff has not met his burden of establishing that Jones ever made such a representation concerning a person guarantee on Plaintiff's investment.

### c. Statements to Convert Contribution to Loan

Plaintiff also argues Jones made misrepresentations in order to get Plaintiff to convert his investment into a loan obligation. In February 2021, the parties agreed to turn

MEMORANDUM OF DECISION - 9

Plaintiff's $230,000 investment into a loan obligation to Good Burger of Tenth and Main, LLC. Ex. 201. The parties exchanged several text messages about converting the investment to a loan obligation, and Plaintiff was provided time to review the agreement. *See* Ex. 117. Under the loan, Plaintiff was to be paid in a lump sum of $243,000 upon the sale of the Good Burger of Tenth and Main, LLC to another owner. *Id.* However, the sale never occurred.

Plaintiff argues that Jones converted the investment contribution into a loan obligation owed by a defunct entity that would never have the ability to pay. Further, Plaintiff argues that Jones never intended to repay Plaintiff, regardless of whether it was considered an investment or a loan, and that Jones continuously changed his story about when and how Plaintiff would get repaid. Plaintiff has demonstrated that Jones did repeatedly tell Plaintiff he would repay him through various methods and those plans never came to fruition. However, the testimony indicates that the parties decided to convert the contribution to a loan because Jones intended for Plaintiff to be repaid through the proceeds of the sale of the Good Burger of Tenth and Main, LLC. Though a sale ultimately did not go through, Plaintiff has presented no evidence that Jones was aware that no sale would occur, or that he lacked the intent to pay Plaintiff at the time the parties converted the investment contribution to a loan. Further, despite the failure to sell the Good Burger of Tenth and Main, LLC, Jones did repay part of the amount owing to Plaintiff through a series of checks from It's a Good Burger, LLC, though the amounts were minimal compared to the initial investment. Given this record, the Court finds

MEMORANDUM OF DECISION - 10

Plaintiff has not pointed to sufficient evidence that Jones had the requisite intent for a debt to be declared nondischargeable under § 523(a)(2)(A).

### 3.    Section 523(a)(2)(B)

Next, Plaintiff asserts that the debt owed to him is nondischargeable pursuant to § 523(a)(2)(B).  To assert a claim under § 523(a)(2)(B), Plaintiff must demonstrate by a preponderance of the evidence:

> (1) it provided debtor with money, property, services or credit based on a written representation of fact by the debtor as to the debtor's financial condition;
> (2) the representation was materially false;
> (3) the debtor knew the representation was false when made;
> (4) the debtor made the representation with the intention of deceiving the creditor;
> (5) the creditor relied on the representation;
> (6) the creditor's reliance was reasonable; and
> (7) damage proximately resulted from the representation.

*Maxwell v. Oregon (In re Maxwell)*, 600 B.R. 62, 69–70 (9th Cir. BAP 2019) (citing *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991)).

To be a "writing," it must have been written by the debtor, signed by the debtor, or written by someone else but adopted and used by the debtor.  *Tallant v. Kauman (In re Tallant)*, 218 B.R. 58, 69 (9th Cir. BAP 1996).  Additionally, that writing must concern the debtor's financial condition.  *See* § 523(a)(2)(B).  A statement concerns the debtor's financial condition if "it has a direct relation to or impact on the debtor's overall financial status."  *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 710 (2018).  "A single asset has a direct relation to and impact on aggregate financial condition, so a statement about a single asset bears on a debtor's overall financial condition and can help indicate whether a debtor is solvent or insolvent, able to repay a given debt or not."  *Id.*

MEMORANDUM OF DECISION - 11

In the complaint, Plaintiff alleges that Defendant used "false statements and written records that were materially false, respecting [Defendants]' or Good Burger III's financial condition, upon which Plaintiff relied and which were published with intent to deceive." Doc. No. 1. However, Plaintiff did not produce any such statements regarding Defendants' financial condition. Further, there was no testimony concerning specific written statements produced or used by Jones to induce Plaintiff to invest in Good Burger III. As such, the Court finds Plaintiff did not meet his burden under § 523(a)(2)(B).

4. **Section 523(a)(6)**

Finally, Plaintiff alleges in his complaint that any debt owed to him by Defendants is nondischargeable under § 523(a)(6). Under § 523(a)(6), a debtor is not discharged from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." As noted by the Ninth Circuit in *Lockerby v. Sierra*, "tortious conduct is a required element for a finding of nondischargeability under § 523(a)(6)." 535 F.3d 1038, 1040 (9th Cir. 2008). Thus, a mere breach of contract will not be sufficient unless accompanied by a showing of tortious conduct. *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1205 (9th Cir. 2001).

Parties must establish that the alleged injury was willful. The willfulness requirement is satisfied when "the debtor had a subjective motive to inflict the injury or that the debtor believed the injury was substantially certain to occur as a result of his conduct." *Jercich*, 238 F.3d at 1208. Importantly, under § 523(a)(6), it is not enough that the debtor performed an intentional act which resulted in the injury—the debtor must have intended the injury actually occur. *Masuo v. Galan (In re Galan)*, 455 B.R. 214,

MEMORANDUM OF DECISION - 12

222 (Bankr. D. Idaho 2011). Under this standard, gross recklessness is not sufficient to establish willfulness. *Plyam v. Precision Dev., LLC (In re Plyam)*, 530 B.R. 456, 464 (9th Cir. BAP 2015). Further, the debtor's actions must have been malicious. "A malicious injury involves (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." *Jercich*, 238 F.3d at 1209. "Malice may be inferred based on the nature of the wrongful act where willfulness has already been established." *Herrera v. Scott (In re Scott)*, 588 B.R. 122, 131 (Bankr. D. Idaho 2018).

Here, though it was alleged in the complaint, Plaintiff made no argument concerning § 523(a)(6) in his pre-trial brief or closing brief. Furthermore, as discussed previously, Plaintiff has not established that Jones acted with the requisite intent. As such, the Court finds Plaintiff has not established his claim under § 523(a)(6).

**CONCLUSION**

Plaintiff has not proven by a preponderance of the evidence each of the requisite elements of § 523(a)(2)(A), (a)(2)(B), and (a)(6) and thus will not prevail in this adversary proceeding to have his claim declared nondischargeable. The Court will enter a judgment consistent with this Decision.

DATED: April 12, 2024

_____
NOAH G. HILLEN
Chief U.S. Bankruptcy Judge

MEMORANDUM OF DECISION - 13